**EXHIBIT 1**

Bidding Procedures Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRADE SECRETS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-_____ (__)<br><br>(Jointly Administered)<br><br>Ref. Docket No. ____ |

### ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF DEBTORS' ASSETS; (B) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (C) SCHEDULING AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (D) APPROVING PROCEDURES RELATED TO ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) (i) approving certain bidding procedures (the "Bidding Procedures") in connection with the Debtors' sale (the "Sale") of certain assets (as described more fully in the Motion and in the Asset Purchase Agreement, the "Acquired Assets"), (ii) approving the form of the asset purchase agreement (the "Asset Purchase Agreement") in connection with the Sale, substantially in the form attached as Exhibit 3 to the Motion, by and

---

[1]    The Debtors in these cases, along with the last four (4) digits of their federal tax identification numbers (if applicable) are:  Premier Salons Beauty Inc. (EIN XX-XXX9717); Trade Secret, Inc. (EIN XX-XXX1292); Premier Salons Trade Secret Inc. (EIN XX-XXX9005); BeautyFirst, Inc. (EIN XX-XXX1954); Trade Secret Beauty Stores Inc. (EIN XX-XXX9804); Trade Secret Exclusive Stores Inc. (EIN XX-XXX9902); Trade Secret Luxury Stores Inc. (EIN XX-XXX9865); PureBeauty, Inc. (EIN XX-XXX4358).  The address for each Debtor is 3762 14th Avenue, # 200, Markham, Ontario L3R 0G7, Canada.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the Bidding Procedures (as defined below), as appropriate.

069219.1001

between Debtors and the Regis Corporation ("Purchaser") (iii) scheduling an auction (the "Auction") in connection with, and hearing (the "Sale Hearing") to consider approval of, the Sale, (iv) approving certain procedures (the "Cure Procedures") related to the assumption of certain executory contracts and unexpired leases, (v) approving the form and manner of notice with respect to the foregoing and (vi) granting certain related relief, including approval of the Expense Reimbursement; and having considered any and all responses and objections to the Motion; and the Court having determined that, to the extent set forth herein, the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; due and appropriate notice of the Motion and the relief requested therein was provided by the Debtors; and upon the remainder of the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND, CONCLUDED AND DECLARED THAT:[3]

A.      This Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

B.      Notice of the hearing on the Motion and proposed entry of this Order has been provided to the Bidding Procedure Notice Parties.  Under the circumstances, and in light of the relief requested in the Motion, requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rules 4001(c) and (d) and 9014, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, section 102(1) of the Bankruptcy Code, and no further notice of, or hearing on, the Motion or this Order is necessary or required.

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2

C.     The Debtors' proposed notices of (i) the Sale, (ii) the Sale Hearing, (iii) the Auction, (iv) the assumption and assignment of the Assumed Contracts and the Cure Procedures related thereto, (v) the Asset Purchase Agreement and the terms contained therein and (vi) the Bidding Procedures, in substantially the form of the Auction and Sale Notice attached hereto as <u>Exhibit B,</u> are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Sale, the Auction, the assumption and assignment of the Assumed Contracts, the Asset Purchase Agreement and the Bidding Procedures to be employed in connection therewith.

D.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Bidding Procedures. The Bidding Procedures were negotiated in good faith by the Debtors and the Purchaser and are reasonable and appropriate.

E.     The Purchaser has expended, and likely will continue to expend, considerable time, money and energy pursuing the Sale and has engaged in extended arms' length and good faith negotiations with the Debtors. The Asset Purchase Agreement is the culmination of these efforts.

F.     Recognizing this expenditure of time, energy and resources, the Debtors have agreed to pay the Expense Reimbursement to the Purchaser on the terms and conditions set forth in the Asset Purchase Agreement.

G.     The Expense Reimbursement is (i) a material inducement for, and condition of, the Purchaser's entry into the Asset Purchase Agreement and (ii) fair and reasonable in view of the fact that if the Expense Reimbursement is triggered, Purchaser's efforts

3

will have substantially increased the chances that the Debtors will receive the highest or otherwise best offer for the Acquired Assets.

   H. The Debtors have demonstrated a sound business justification for authorizing the payment of the Expense Reimbursement to the Purchaser under the circumstances set forth in the Asset Purchase Agreement and on the record of these chapter 11 proceedings.

   I. The entry of this Order is in the best interests of the Debtors, their estates and creditors and other parties in interest; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

   1. The relief requested in the Motion is granted to the extent set forth herein.

   2. The Bidding Procedures attached hereto as <u>Exhibit A</u> are hereby approved and fully incorporated into this Order, and shall apply with respect to the proposed sale of the Acquired Assets; <u>provided</u>, <u>however</u>, that the terms of the Asset Purchase Agreement shall remain subject to approval by the Court at the Sale Hearing. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

   3. All responses or objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court are overruled.

   4. The Expense Reimbursement is hereby approved.

   5. A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the following parties: (a) the Debtors, c/o Walker, Truesdell, Roth & Associates, 380 Lexington Avenue, New York, NY 10168 (Attn: Hobart Truesdell); (b) the Luborsky Family Trust II 2009, 3762 14th Avenue # 200, Markham, Ontario L3R 0G7, Canada (Attn: Brian G.

4

      

Luborsky); (c) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Joseph M. Barry, Esquire and Kenneth J. Enos, Esquire); (d) Stoney Bridge Partners, Inc., 45 St. Clair Avenue West, Suite 1202, Toronto, ON M4V 1K9 Canada (Attn: Robert von der Porten and James Cook); (e) SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428 (Attn: J. Scott Victor) (f) counsel to the Purchaser, Ravich Meyer Kirkman McGrath Nauman & Tansey, 4545 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402 (Attn: Michael L. Meyer); (g) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David L. Buchbinder, Esquire); and (h) once it is formed, counsel to the Committee (collectively, the "Bidding Notice Parties"), not later than 4:00 p.m. (Eastern Time) on ____, 2010 and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

6.      The Debtors shall have the right to reject any and all bids that they believe in their reasonable discretion, in consultation with the Committee, do not comply with the Bidding Procedures.  The Purchaser's Bid as embodied in the Asset Purchase Agreement is deemed to be a Qualified Bid.

7.      As further described in the Bidding Procedures, if a Qualified Bid other than Purchaser's Bid is timely received, the Auction will be held on ____, 2010 at _____. (Eastern Time), and the Debtors shall notify the Bidding Notice Parties and all Qualified Bidders which have submitted a Qualified Bid and expressed their intent to participate in the Auction as to the time and place of the Auction designated by the Debtors not later than 4:00 p.m. (Eastern Time) on _____, 2010.

8. The Purchaser is authorized to make one or more credit bids at the Auction equal to (i) the Expense Reimbursement plus (ii) any or all of the Purchaser's claims and outstanding obligations under the Security Agreement, pursuant to section 363 of the Bankruptcy Code.

9. Not later than three (3) days after entry of this Order, the Debtors will cause the Auction and Sale Notice, in substantially the form attached hereto as <u>Exhibit B</u>, to be sent by first-class mail postage prepaid to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' prepetition lenders; (c) the Purchaser; (d) the parties included on the Debtors' consolidated list of twenty (20) creditors holding the largest unsecured claims; (e) any party which, to the best of the Debtors' knowledge, information and belief, has, in the past year, expressed in writing to the Debtors an interest in buying their business and which the Debtors and their representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transactions contemplated by the Motion; (f) all parties which, to the best of the Debtors' knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (g) all taxing authorities or recording offices which have a reasonably known interest in relief requested in the Motion; and (h) all parties requesting notice pursuant to Local Rule 2002-1(b).

10. Not later than seven (7) days after the entry of this Order, the Debtors shall cause the Publication Notice, in substantially the form attached hereto as <u>Exhibit C</u>, to be published in the national edition of <u>The New York Times</u>. Such Publication Notice shall be sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

11.     In addition, to facilitate the assumption and assignment of any Assumed

Contracts, the Debtors will serve the Assumption and Assignment Notice, in substantially the

form attached hereto as Exhibit D, not later than five (5) days after the entry of this Order, upon

each counterparty to the Assumed Contracts and their known counsel, if any.[4]  To the extent

that the Purchaser is not the Successful Bidder and an alternative Successful Bidder is seeking

to have certain Assumed Contracts assumed and assigned as part of an alternative transaction,

the Debtors and the Successful Bidder shall provide financial information for the alternative

bidder to all non-Debtor parties to such Assumed Contracts and their known counsel, if any,

immediately following the Auction via overnight delivery or facsimile or other form of

electronic transmission.

12.     The Debtors will attach to the Assumption and Assignment Notice a

schedule of cure obligations (the "Cure Schedule") for the Assumed Contracts.  The Cure

Schedule shall include a description of each Assumed Contract to be assumed and assigned to

the Purchaser pursuant to the Asset Purchase Agreement, and the amount (the "Cure Cost"), if

any, the Debtors believe is necessary to cure each such agreement pursuant to section 365 of the

Bankruptcy Code.  If no Cure Cost is listed in the Cure Schedule, the Debtors believe that there

is no Cure Cost for such Assumed Contract.  Unless the non-Debtor party to an Assumed

Contract files an objection (a "Cure Objection") to its Cure Cost by ____, 2010 at 4:00 p.m.

(Eastern Time) (or in the event the Purchaser is not the Successful Bidder, at or prior to the Sale

Hearing), and at the same time serves the Cure Objection upon all of the Bidding Notice Parties,

such non-Debtor party to the Assumed Contract shall be:  (a) forever barred from asserting any

additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the

---

[4]     The Purchaser will provide the non-Debtor parties to the Assumed Contracts with financial information upon
written request to the Purchaser

Successful Bidder will be entitled to rely solely upon the Cure Cost set forth in the Assumption and Assignment Notice and the Cure Schedule included therein; (b) deemed to have consented to the Debtors' assumption and assignment of such Assumed Contract; and (c) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder (i) that any additional amounts are due or other defaults exist, (ii) that additional conditions to assumption and assignment must be satisfied by the Debtors or the Successful Bidder or (iii) that there is any objection or defense with respect to the assumption and assignment of such Assumed Contract.

13.     In the event that a Cure Objection is timely filed, such Cure Objection must set forth (i) the basis for the objection set forth therein, (ii) with specificity, the amount the party asserts as the appropriate Cure Cost, and (iii) appropriate documentation in support of its proposed Cure Cost. In the event that the Debtors and the non-Debtor party to the Assumed Contract cannot consensually resolve the Cure Objection, the Purchaser, the Successful Bidder or any other assignee will segregate any disputed Cure Costs pending the resolution of any such disputes by this Court or mutual agreement of the parties.

14.     Hearings on Cure Objections may be held (a) at the Sale Hearing or (b) on such other date as this Court may designate, provided that if the subject Assumed Contract is assumed and assigned, the Cure Cost asserted by the objecting party (or such lower amount as may be fixed by this Court) shall be deposited and held in a segregated account by the Successful Bidder or any other assignee pending further order of this Court or mutual agreement of the parties.

15.     The Debtors' decision to assume and assign Assumed Contracts is subject to Court approval and consummation of the Sale. Absent consummation of the Sale, each of the

YCST01:9726428.8

069219.1001

Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

16.     Except to the extent otherwise provided in the Asset Purchase Agreement or the purchase and sale agreement with the Successful Bidder, subject to any Cure Cost payments, the assignee of any Assumed Contracts will not be subject to any liability to the non-Debtor counterparty to the Assumed Contracts that accrued or arose before the closing date of the Sale and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

17.     Objections, if any, to the relief requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (Eastern Time) on _____, 2010 and (d) be served so as to be received no later than 4:00 p.m. (Eastern Time) on the same day upon the Bidding Notice Parties, provided, however, to the extent that the Purchaser is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain Assumed Contracts assumed and assigned as part of an alternative transaction, the non-Debtor parties to such Assumed Contracts shall have until the Sale Hearing to raise objections to the sale to the alternative Successful Bidder including, without limitation, to the timing and sufficiency of the adequate assurance of future performance, including as to the timing of adequate assurance of future performance.

18.     The Sale Hearing shall be held before this Court on _____, 2010 at ___:__0 __.m. (Eastern Time). The Sale Hearing may be adjourned, from time to time, without further

notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

19.     The Auction and Sale Notice, Publication Notice and Assumption and Assignment Notice to be issued in connection with the Sale, substantially in the form of the notices annexed hereto as Exhibits B, C and D respectively, are approved.

20.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

21.     As provided by Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

22.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bidding Procedures.

Dated: _____, 2010
        Wilmington, Delaware

_____
United States Bankruptcy Judge

10

# EXHIBIT A TO BIDDING PROCEDURES ORDER

Bidding Procedures

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRADE SECRET, INC., *et al.*,[1] | Case No. 10-_____ (___) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

The above-captioned debtors and debtors-in-possession (collectively the "Debtors")[2] have filed chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and jointly administered under Case No. _____ (___). By motion dated July 6, 2010 (the "Motion"), the Debtors sought, among other things, approval of the process and procedures set forth below (the "Bidding Procedures") through which they will determine the highest, best or otherwise financially superior offer for substantially all of their assets (the "Acquired Assets"). On _____, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved the Bidding Procedures.

On _____, 2010, as further described below and in the Motion and Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtors shall seek entry of the order (the "Sale Order") authorizing and approving the sale of the Acquired Assets (the "Proposed Sale") to the Purchaser (as defined below) or to one or more other Qualified Bidders (defined below) that the Debtors, in their sole discretion, determine to have made the highest, best or otherwise financially superior offer.

*Agreement*

On _____, 2010, the Debtors entered into an asset purchase agreement (the "Agreement," a copy of which is attached to the Motion as Exhibit 3) with Regis Corporation (the "Purchaser"), pursuant to which the Purchaser proposes to acquire the Acquired Assets. Pursuant to the Agreement, the Purchaser would provide consideration for the Acquired Assets equal to that contained in Section _____ of the Agreement (the "Purchase Price"). Such Purchase Price will be in the form of a credit bid, under section 363(k) of the Bankruptcy Code,

---

[1]     The Debtors in these cases, along with the last four (4) digits of their federal tax identification numbers (if applicable) are:  Premier Salons Beauty Inc. (EIN XX-XXX9717); Trade Secret, Inc. (EIN XX-XXX1292); Premier Salons Trade Secret Inc. (EIN XX-XXX9005); BeautyFirst, Inc. (EIN XX-XXX1954); Trade Secret Beauty Stores Inc. (EIN XX-XXX9804); Trade Secret Exclusive Stores Inc. (EIN XX-XXX9902); Trade Secret Luxury Stores Inc. (EIN XX-XXX9865); PureBeauty, Inc. (EIN XX-XXX4358).  The address for each Debtor is 3762 14th Avenue, # 200, Markham, Ontario L3R 0G7, Canada.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement (defined below).

on account of the obligations owed to the Purchaser under the prepetition security agreement (the (the "Security Agreement"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

*Assets for Sale*

The Debtors are offering for sale in one or more transactions all or substantially all of their assets. The assets for sale do not include the Excluded Assets.

*Participation Requirements*

To participate in the bidding process or to otherwise be considered for any purpose hereunder, a person interested in all or portions of the Acquired Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtors, their counsel, and counsel to any official committee appointed in these chapter 11 cases (a "Committee"), not later than ten days from entry of the Bidding Procedures Order:

1.   Confidentiality Agreement. An executed confidentiality agreement in form and substance acceptable to the Debtors and their counsel, a form of which is attached hereto as Exhibit A;

2.   Identification of Potential Bidder. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the assets of the Debtors do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in subparagraphs (a) and (b) below (together with documents described in paragraphs 1 and 2 immediately above, collectively the "Bidder's Contemplated Transaction Documents") and that the Debtors in their discretion and with assistance from their advisors determine is reasonably likely to submit a *bona fide* offer that would result in greater cash value being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

(a)   Corporate Authority. Within ten (10) days prior to the Bid Deadline (defined below), written evidence of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "Principals"); and

2

(b) <u>Proof of Financial Ability to Perform</u>. Within ten (10) days prior to the Bid Deadline (defined below), written evidence that the Debtors reasonably conclude demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, inter alia, the following:

i. the Potential Bidder's current financial statements (audited if they exist);

ii. contact names and numbers for verification of financing sources;

iii. evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction; <u>provided, however</u>, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(b) above, the Debtors, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Purchaser is deemed a Qualified Bidder.

*Access to Due Diligence Materials*

After entry of the Bidding Procedures Order, only Potential Bidders that comply with the Participation Requirements are eligible to receive due diligence access or additional non-public information. If the Debtors determine that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Acquired Assets.

If the Debtors furnish any information related to the Debtors not theretofore given to Purchasers, then the Debtors shall make such information available to Purchasers and each Qualified Bidder.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "<u>Bidder</u>") shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a

3

basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

**Bidding Process**

The Debtors and their advisors, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Acquired Assets (collectively, the "Bidding Process"). The Debtors shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids by a Qualified Bidder shall be ____ 2010 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline").

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its cash bid to: (a) the Debtors, Walker Truesdell, Roth & Associates, 380 Lexington Avenue, Suite 1014, New York, NY 10168 (Attn: Hobart Truesdell); (b) the Luborsky Family Trust II 2009, 3762 14th Avenue # 200, Markham, Ontario L3R 0G7, Canada (Attn: Brian G. Luborsky); (c) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Joseph M. Barry, Esquire and Kenneth J. Enos, Esquire); (d) Stoney Bridge Partners, Inc., 45 St. Clair Avenue West, Suite 1202, Toronto, ON M4V 1K9 Canada (Attn: Robert von der Porten and James Cook); (e) SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428 (Attn: J. Scott Victor) (f) counsel to the Purchaser, Ravich Meyer Kirkman McGrath Nauman & Tansey, 4545 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402 (Attn: Michael L. Meyer); (g) the Office of the United States Trustee; and (h) once it is formed, counsel to any committee appointed in the Debtors' chapter 11 cases (collectively, the "Bidding Notice Parties") by the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid (unless the Bid Deadline is extended by the Debtors in their sole discretion).

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtors to satisfy each of the following conditions:

1. <u>Good Faith Deposit</u>. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtors in an amount equal to ten (10) percent of

4

such Bid.

2. <u>Minimum Overbid</u>. The aggregate consideration must equal or exceed the sum of (i) the Purchase Price plus (ii) the Expense Reimbursement plus (iii) $500,000(the "<u>Initial Minimum Overbid Increment</u>").

3. <u>Irrevocable</u>. A Bid must be irrevocable until two (2) business days after the Acquired Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "<u>Termination Date</u>").

4. <u>The Same or Better Terms</u>: The Bid must be on terms that, in the Debtors' business judgment are substantially the same or better than the terms of the Agreement. A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "<u>Contemplated Transaction Documents</u>"). A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to Purchase Price). The Contemplated Transaction Documents must include a commitment to close by the Termination Date. A Bid should propose a contemplated transaction involving all of the Acquired Assets, but the Debtors will consider proposals for less than substantially all the Acquired Assets, provided that the Debtors may evaluate all Bids, in their sole discretion, to determine whether such Bid maximizes the value of the Debtors' estates as a whole.

5. <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

6. <u>Financing Sources</u>: A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtors with appropriate contact information for such financing sources.

7. <u>No Fees payable to Qualified Bidder</u>: A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bidding Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "<u>Qualified Bid</u>," if the Debtors believe, in their reasonable discretion, that such bid would be consummated

5

if selected as the Successful Bid. For purposes hereof, the Agreement shall constitute a Qualified Bid, notwithstanding paragraph 7 above.

In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

<u>**Auction**</u>

Only if a Qualified Bid (other than the Purchaser's) is received by the Bid Deadline, shall the Debtors conduct an auction (the "<u>Auction</u>") to determine the highest and best bid with respect to the Acquired Assets. The Debtors shall provide the Purchaser and all Qualified Bidders with copies of all Qualified Bids at least twenty-four (24) hours prior to any Auction. The Auction shall commence on ____, 2010 at ____. (ET) at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, and any changes to the time and location of the Auction will either be filed with the Court or announced at the Auction. The Auction will be conducted openly and all creditors will be permitted to attend.

No later than the commencement of the Auction, the Debtors will notify all Qualified Bidders of (i) the highest, best and otherwise financially superior Qualified Bid, as determined in the Debtors' discretion (the "<u>Baseline Bid</u>") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders (if the Purchaser's Qualified Bid constitutes the Baseline Bid then the Expense Reimbursement shall be added to the Qualified Bid for purposes of the Auction).

If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Purchaser will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek approval of and authority to consummate the Proposed Sale contemplated by the Agreement.

The Auction shall be conducted according to the following procedures:

1.     <u>Participation at the Auction</u>
Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders, the Committee, and the Debtors shall be permitted to participate. Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the Auction or the Proposed Sale.

During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of at least $500,000. Other than otherwise set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest, best or otherwise financially superior offer for the Acquired Assets.

6

2.    The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following: (A) the amount and nature of the consideration; (B) the proposed assumption of any liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the Agreement, if any, contemplated by the Contemplated Transaction Documents, and (H) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a transcript or videotape of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

3.    Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

i.    Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $500,000 Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash; provided, however, that notwithstanding the foregoing, any Overbid by the Purchaser may be a credit bid under section 363(k) of the Bankruptcy Code, either in full or in part.

ii.    Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

To the extent not previously provided (which shall be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

iii.    Announcing Overbids

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtor's estate based on, *inter alia*, the Bid Assessment Criteria.

7

iv.     Consideration of Overbids

The Debtors reserve the right, in their reasonable business judgment, and, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Qualified Bidder (other than the Purchaser) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

4.      Additional Procedures

The Debtors may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion, will promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

5.      Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

6.      Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest, best or otherwise financially superior offer for the Acquired Assets (the "Successful Bid") and the entity or entities submitting such Successful Bid, the "Successful Bidder"), which highest, best or otherwise financially superior offer will provide the greatest amount of net value to the Debtors, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination (the "Back-up Bidder"). If the Purchaser's final bid is deemed to be highest and best at the conclusion of the Auction, Purchaser will be the Successful Bidder, and such bid, the Successful Bid. If the Purchaser is not the Successful Bidder, the Purchaser's final bid shall only be a binding Back-up bid if the Purchaser submits a bid at the Auction that is higher and better than their bid as set forth in the Agreement. Prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

8

### Acceptance of Successful Bid

The Debtors shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Debtors' selection of the Successful Bidder (including the assignment of any of such objector's Assumed Contract (as defined in the Bidding Procedures Order) thereto, provided, however, that any objection to such assignment on the basis of the Cure Cost (as defined in the Bidding Procedures Order) must be made and/or reserved as set forth in the order approving these Bidding Procedures).

### Credit Bidding

The Purchaser can credit bid some or all of its claims to the full extent permitted by section 363(k) of the Bankruptcy Code.

### Free Of Any And All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Acquired Assets.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on a day that is one (1) business day following the Auction Date or on such date as may be established by the Bankruptcy Court. Following the approval of the sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fail to consummate an approved sale within twenty (20) days after entry of an Order approving the Sale, the Debtors shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good

9

Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

## Failure to Consummate Sale

If the Auction is conducted, the Back-up Bidder shall keep the Back-up Bid open and irrevocable until 5:00 p.m. (ET) on the first business day following the Closing of the Sale with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-up Bidder's bid will be deemed to be the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the sale with the Back-up Bidder without further order of the Court upon at least 24 hours' notice to the Bidding Notice Parties. In such case, the Successful Bidder's deposit shall be forfeited to the Debtors as damages and the Debtors specifically reserve all right to seek all available damages from the defaulting Successful Bidder.

## Modifications

The Bidding Procedures may not be modified except with the express written consent of the Debtors and the Purchaser.

The Debtors, may (a) determine, which Qualified Bid, if any, is the highest, best or otherwise financially superior offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

At or before the Sale Hearing, the Debtors may impose such other terms and conditions as the Debtors may determine to be in the best interests of the Debtors' estate, their creditors and other parties in interest.

YCST01:9726428.8                                                                                              069219.1001

# EXHIBIT I

## Form Confidentiality Agreement

**PRIVATE AND CONFIDENTIAL**

Attn: [Name]

[Firm Legal Name]

[Address]

[Name]:

In connection with our mutual consideration of a potential transaction involving the respective sale or purchase of certain assets (the "Proposed Transaction") between Trade Secret, Inc. and its affiliated entities ("Trade Secret"), on the one hand, and [Firm Legal Name] ("[Firm]"), on the other hand, [Firm] has requested certain information concerning Trade Secret, and Trade Secret, in turn, has requested certain information concerning [Firm]. This information is confidential and proprietary to the respective parties and not otherwise available. Each party agrees that, in consideration of, and as a condition to, furnishing such information, it will abide by the following:

1.      Confidentiality Agreement. Each of Trade Secret and [Firm], as applicable (each, a "Receiving Party"), hereby agrees to treat all information, whether written or oral, concerning [Firm] or Trade Secret, as applicable (each, a "Disclosing Party"), or any of their respective affiliates, subsidiaries or divisions, which the Disclosing Party or any directors, officers, employees, partners, agents or representatives (collectively, the "Representatives") of the Disclosing Party furnishes, whether before or after the date of this agreement, to the Receiving Party or its Representatives, together with all originals or copies of all reports, analyses, compilations, data, studies and other materials which contain or otherwise reflect or are generated from such information (collectively, the "Evaluation Material"), confidential and in accordance with the provisions of this agreement. Notwithstanding the foregoing, the term "Evaluation Material" shall not for the purposes of this agreement include any information which (a) at the time of disclosure or thereafter is generally available to and known by the public other than as a result of a disclosure by the Receiving Party or its Representatives, (b) was or becomes available to the Receiving Party on a non-confidential basis from a source other than the Disclosing Party or any of its Representatives; provided that such source is not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation to, the Disclosing Party, or (c) has been independently acquired by the Receiving Party without violating any of the obligations of the Receiving Party or its Representatives under this agreement or any other confidentiality agreement, or under any other contractual, legal or fiduciary obligations of the Receiving Party or its Representatives.

2.  Use of Evaluation Material and Confidentiality.

        a.      Subject to Paragraph 2(b) below, the Evaluation Material will be kept confidential by the Receiving Party and its Representatives and will not, without the prior written consent of the Disclosing Party, be disclosed, in whole or in part, to any third party by the Receiving Party or any of its Representatives in any manner whatsoever, and will not be used by the Receiving Party or any of its Representatives, directly or indirectly, for any purpose other than in connection with the Receiving Party's

evaluation of the Proposed Transaction. In addition, the Receiving Party hereby agrees not to disclose that the Receiving Party is evaluating the Proposed Transaction and agrees to transmit Evaluation Material to only those of its Representatives who need to know the information for the purpose of evaluating the Proposed Transaction and are informed by the Receiving Party of the confidential nature of the information. The Receiving Party agrees not to make any such disclosure or transmission unless the Receiving Party is satisfied that its Representatives will act in accordance herewith. The Receiving Party agrees that it will be responsible for any breach of any of the provisions of this agreement by any of its Representatives and the Receiving Party agrees to take, at its sole expense, all necessary measures to restrain its Representatives from prohibited or unauthorized disclosure or use of the Evaluation Material (including, without limitation, the initiation of court proceedings).

        b.     In the event that the Receiving Party or any of its Representatives is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose (i) any Evaluation Material, (ii) any information relating to the opinion, judgment or recommendation of any such person concerning the Disclosing Party, its affiliates or subsidiaries, or (iii) any other information supplied to the Receiving Party in the course of the Receiving Party's, or its Representatives', dealings with the Disclosing Party, the Receiving Party will promptly notify the Disclosing Party of such request or requirement so that the Disclosing Party may seek an appropriate protective order or waive compliance with the provisions of this agreement, and/or take any other mutually agreed action. If, in the absence of a protective order or the receipt of a waiver hereunder, the Receiving Party or any of its Representatives is, in the reasonable opinion of such person's counsel, compelled to disclose information or else stand liable for contempt or suffer other censure or significant penalty, the Receiving Party or such Representative may disclose that portion of the requested information which such person's counsel advises such person in writing that such person is compelled to disclose. In any event, the Receiving Party and its Representatives will furnish only that portion of the information which is legally required and will exercise its best efforts to obtain reliable assurance that confidential treatment will be accorded the information. In addition, neither the Receiving Party nor any of its Representatives will oppose action by the Disclosing Party to obtain an appropriate protective order or other reliable assurance that such confidential treatment will be so accorded and the Receiving Party and its Representatives shall cooperate with the Disclosing Party to obtain such order or other assurance.

3.     <u>Nondisclosure of Negotiations</u>. Except as otherwise expressly permitted hereby, without the prior written consent of the other party, each party hereby agrees that it will not, and will direct its Representatives not to, disclose to any person the fact that any discussions (or any other discussions between or involving the parties) with respect to the matters contemplated hereby are taking, have taken or are proposed to take place or other facts with respect to such discussions, including the status thereof, or the fact (if such becomes the case) that any Evaluation Material has been made available to either party, nor otherwise make any public disclosure, whether written or oral, with respect to this agreement or the actions or transactions contemplated hereby; <u>provided</u>, <u>however</u>, that a

party may, without the prior consent of the other party, issue such press release or make such public statement as may be required by law or the applicable rules of any stock exchange or Nasdaq if it has used its reasonable best efforts to consult with the other party prior to issuing such release or making such public statement and to obtain such party's prior consent, but has been unable to do so in a timely manner. No request or proposal to amend, modify or waive any provision of this agreement shall be made or solicited except in a non-public and confidential manner which does not give rise to any disclosure obligation on the part of either party.

4.  Access to Employees; No Solicitation. For one year from the date of this agreement, each party agrees not to initiate or maintain contact (except for those contacts made in the ordinary course of business) with any officer, director or employee of the other party regarding the business, operations, prospects or finances of such other party, except with the express permission of such other party, or as contemplated in this agreement. Nothing contained herein shall preclude the hiring of any such employee of Trade Secret who: (i) responds to a general solicitation of employment through an advertisement not targeted specifically at Trade Secret or its employees; or (ii) is referred to the other party by search firms, employment agencies or similar entities, provided that such entities have not specifically been instructed by such party to solicit Trade Secret employees. Unless otherwise agreed to by Trade Secret in writing, all (a) communications regarding any possible transaction, (b) requests for additional information, (c) requests for facility tours or management meetings, and (d) discussions or questions regarding procedures, timing and terms, will be submitted or directed to Trade Secret's investment bankers, SSG Capital Advisors, LLC.

5.  Federal Securities Laws. Each party acknowledges that it and its Representatives are (a) aware that the United States securities laws prohibit any person who has material, non-public information concerning a company from purchasing or selling securities of such company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities, and (b) familiar with the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder (collectively, the "Exchange Act"), and that it and its Representatives will neither use, nor cause any third party to use, any Evaluation Material in contravention of such Exchange Act, including, without limitation, Rule 10b-5 thereunder.

6.  Return of Evaluation Material. Upon the request of either party, the other party will promptly return all Evaluation Material (and all copies thereof) furnished to the other party or its Representatives. Each party and its Representatives will destroy any analyses, compilations, studies or other documents prepared by or for such party's, or its Representatives', internal use which include, utilize or reflect the Evaluation Material. Such destruction will be confirmed by each party upon written request of the other party. Notwithstanding the return or destruction of the Evaluation Material, each party and its Representatives will continue to be bound by its obligations of confidentiality hereunder.

7.  No Definitive Agreement. Each party agrees that unless and until a definitive agreement between the parties with respect to the Proposed Transaction has been

executed and delivered, neither party will be under any legal obligation of any kind whatsoever with respect to any such transaction by virtue of this or any written or oral expression with respect to such transaction by either of the parties or their respective Representatives except, in the case of this agreement, for the matters specifically agreed to herein. Each party further acknowledges and agrees that it reserves the right, in its sole discretion, to reject any and all proposals made by the other party or any of its Representatives with regard to any Proposed Transaction, and to terminate discussions and negotiations concerning a Proposed Transaction with the other party at any time.

8. <u>Accuracy of Evaluation Material</u>. Each party acknowledges and agrees that it has endeavored, and shall continue to endeavor, to include in the Evaluation Material information known to it and that it believes is relevant to the other party's evaluation of the Proposed Transaction. Notwithstanding the foregoing, each party acknowledges and agrees that the other party is making no representation or warranty as to the accuracy or completeness of the Evaluation Material. The Receiving Party agrees that it shall assume full responsibility for all conclusions it derives from the Evaluation Material and that neither the Disclosing Party nor any of its Representatives shall have any liability with respect to the Evaluation Material or the use or content thereof.

9. <u>Remedies</u>. Each party agrees that monetary damages would not be a sufficient remedy for any breach of this agreement and that in addition to all other remedies, each party shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach, and each party further agrees to waive and to use its best efforts to cause its Representatives to waive, any requirement for the securing or posting of any bond in connection with any such remedy. In the event of litigation relating to this agreement, if a court of competent jurisdiction determines that a party or any of its Representatives has breached this agreement, it shall be liable for and pay to the other party on demand the legal fees and expenses incurred by such party in connection with such litigation, including any appeal therefrom.

10. <u>Waiver and Amendment</u>. Each party understands and agrees that no failure or delay by the <u>other</u> party or any of its Representatives in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. The agreements set forth herein may only be waived or modified by an agreement in writing signed on behalf of the parties.

11. <u>Successors and Assigns</u>. This agreement shall inure to the benefit of and be enforceable by each of the parties and their successors and permitted assigns.

12. <u>Severability</u>. In case provisions of this agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this agreement shall not in any way be affected or impaired thereby. This Agreement contains the entire agreement between the parties regarding its subject matter and supersedes all prior agreements, understandings, arrangements and discussions between the parties regarding such subject matter.

13.    Governing Law; Venue.  The validity, interpretation, performance and enforcement of this agreement shall be governed by the laws of the State of Delaware. The parties hereby irrevocably and unconditionally consent to the exclusive jurisdiction of the courts of the State of Delaware and the United States District Court for the District of the State of Delaware for any action, suit or proceeding arising out of or relating to this agreement or the Proposed Transaction, and agree not to commence any action, suit or proceeding related thereto except in such courts.  The parties further hereby irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of or relating to this agreement in the courts of the State of Delaware or the United States District Court for the District of the State of Delaware and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.  Each of the parties further agrees that service of any process, summons, notice or document by U.S. registered mail to its address set forth above shall be effective service of process for any action, suit or proceeding brought against it in any such court.

14.    Expiration.  The terms of this agreement will expire two years after the date hereof.

15.    Counterparts.  This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement.

[signature page to follow]

Please acknowledge your agreement to the foregoing by countersigning this agreement in the place provided below and returning it to the undersigned.

Very truly yours,

Trade Secret, Inc.

By:_____
Name:
Title:

Accepted and Agreed to,

this \_\_\_\_ day of _____, 2010

[Firm Legal Name]

By:_____

Name:

Title:

# EXHIBIT B TO BIDDING PROCEDURES ORDER

Auction and Sale Notice

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRADE SECRET, INC.., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-_____ (__)<br><br>(Jointly Administered) |

## AUCTION AND SALE NOTICE

**PLEASE TAKE NOTICE** that on July 6, 2010, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the Debtors' Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I)(A) Approving Procedures in connection with Sale of Debtors' Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice Thereof; and (F) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief [Docket No. _____] (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors have received a Qualified Bid from the Purchaser. All parties that may be interested in submitting a bid for the Acquired Assets or any portion thereof or taking part in the Auction (as defined below) must read carefully the Bid Procedures as outlined in the Bidding Procedures Order (as defined below).

Only those parties that submit Qualified Bids may participate in the Auction (as defined below); if you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures as referenced in the Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order"). Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge upon request of Debtors' counsel, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Andrew L. Magaziner, Esquire).

A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to: (a) the Debtors, 3762 14th Avenue # 200, Markham, Ontario L3R 0G7, Canada (Attn: Brian G. Luborsky); (b) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Joseph M. Barry and Kenneth J. Enos, Esquire); (c) Stoney Bridge Partners, Inc., 45 St. Clair Avenue West, Suite 1202, Toronto, ON M4V 1K9 Canada (Attn: Robert von der Porten and James Cook); (d) SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428 (Attn: J. Scott Victor) (e) counsel to the Purchaser, Ravich Meyer Kirkman McGrath Nauman & Tansey, 4545 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402 (Attn: Michael L. Meyer); (e) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn:

---

[1] The Debtors in these cases, along with the last four (4) digits of their federal tax identification numbers (if applicable) are: Premier Salons Beauty Inc. (EIN XX-XXX9717); Trade Secret, Inc. (EIN XX-XXX1292); Premier Salons Trade Secret Inc. (EIN XX-XXX9005); BeautyFirst, Inc. (EIN XX-XXX1954); Trade Secret Beauty Stores Inc. (EIN XX-XXX9804); Trade Secret Exclusive Stores Inc. (EIN XX-XXX9902); Trade Secret Luxury Stores Inc. (EIN XX-XXX9865); PureBeauty, Inc. (EIN XX-XXX4358). The address for each Debtor is 3762 14th Avenue, # 200, Markham, Ontario L3R 0G7, Canada.

[2] All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion and the Bid Procedures, as appropriate.

David L. Buchbinder, Esquire); and (f) once it is formed, counsel to the Committee (collectively, the "Bidding Notice Parties"), not later than 4:00 p.m. (Eastern Time) on _____, 2010 (the "Bid Deadline") and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

If a Qualified Bid other than the Purchaser's Bid is timely received, the Auction will be held on _____, 2010 at _____ (Eastern Time), and the Debtors shall notify the Bidding Notice Parties and all Qualified Bidders which have submitted a Qualified Bid and expressed their intent to participate in the Auction as to the time and place of the Auction designated by the Debtors not later than 4:00 p.m. (Eastern Time) on _____, 2010. If however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Purchaser will be deemed the Successful Bidder, the Asset Purchase Agreement will be the Successful Bid, and, at the Sale Hearing scheduled for _____, 2010 at __:__ _m. (ET), the Debtors will seek approval of and authority to consummate the transaction contemplated by the Asset Purchase Agreement.

Only a Qualified Bidder which has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders and the Debtors shall be permitted to participate in the Auction. The Auction will be conducted openly and all creditors will be permitted to attend. At the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall begin initially with the highest Baseline Bid as disclosed to all Qualified Bidders prior to commencement of the Auction, and continue in minimum increments of at least $_____. The highest, best or otherwise financially superior offer for the Acquired Assets shall be determined by the Debtors in their discretion, in consultation with the Committee, or as determined by the Bankruptcy Court in the event of a dispute.

At the Sale Hearing, the Debtors will present the Successful Bid to the Bankruptcy Court for approval. The Debtors will sell the Acquired Assets or any portion thereof to the Successful Bidder, or to the Purchaser in accordance with the Asset Purchase Agreement if a higher or otherwise better Qualified Bid is not received and accepted as the Successful Bid. If the Successful Bidder fails to consummate an approved Sale because of a breach or a failure to perform on the part of such Successful Bidder, the Debtors shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

If you seek to object to the sale of the Acquired Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order. Such Objections must be filed with the Bankruptcy Court for the District of Delaware and served on the Bidding Notice Parties no later than 4:00 p.m. (Eastern Time) on _____, 2010. If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection.

Dated: Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
       [_____], 2010

James L. Patton, Jr. (No. 2202)
Joseph M. Barry (No. 4221)
Kenneth J. Enos (No. 4544)
Ryan M. Bartley (No. 4985)
Andrew L. Magaziner (No. 5426)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:     (302)571-5039
Facsimile:     (302) 571-1253

*Proposed Counsel to the Debtors and
Debtors-in-possession*

2

## **EXHIBIT C TO BIDDING PROCEDURES ORDER**

Publication Notice

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

In re:

TRADE SECRET, INC., *et al.*,[1]

Debtors.

Chapter 11

Case No. 10-_____ (___)

(Jointly Administered)

## PUBLICATION NOTICE

**PLEASE TAKE NOTICE** that on July 6, 2010, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the Debtors' Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I)(A) Approving Procedures in connection with Sale of Debtors' Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice Thereof; and (F) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief [Docket No. _____] (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors have received a Qualified Bid from the Purchaser. All parties that may be interested in submitting a bid for the Acquired Assets or any portion thereof or taking part in the Auction (as defined below) must read carefully the Bid Procedures as outlined in the Bidding Procedures Order (as defined below).

Only those parties that submit Qualified Bids may participate in the Auction (as defined below); if you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures as referenced in the Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order"). Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge upon request of Debtors' counsel, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Andrew L. Magaziner, Esquire).

A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to: (a) the Debtors, Walker, Truesdell, Roth & Associates, 280 Lexington Avenue, Suite 1014, New York, NY 10168 (Attn: Hobart Truesdell); (b) the Luborsky Family Trust II 2009, 3762 14th Avenue # 200, Markham, Ontario L3R 0G7, Canada (Attn: Brian G. Luborsky); (c) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Joseph M. Barry, Esquire and Kenneth J. Enos, Esquire); (d) Stoney Bridge Partners, Inc., 45 St. Clair Avenue West, Suite 1202, Toronto, ON M4V 1K9 Canada (Attn: Robert von der Porten and James Cook); (e) SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428 (Attn: J. Scott Victor) (f) counsel to the Purchaser, Ravich Meyer Kirkman McGrath Nauman & Tansey, 4545 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402 (Attn: Michael L. Meyer); (g) the Office of the United States Trustee, 844 King Street,

---

[1]     The Debtors in these cases, along with the last four (4) digits of their federal tax identification numbers (if applicable) are: Premier Salons Beauty Inc. (EIN XX-XXX9717); Trade Secret, Inc. (EIN XX-XXX1292); Premier Salons Trade Secret Inc. (EIN XX-XXX9005); BeautyFirst, Inc. (EIN XX-XXX1954); Trade Secret Beauty Stores Inc. (EIN XX-XXX9804); Trade Secret Exclusive Stores Inc. (EIN XX-XXX9902); Trade Secret Luxury Stores Inc. (EIN XX-XXX9865); PureBeauty, Inc. (EIN XX-XXX4358). The address for each Debtor is 3762 14th Avenue, # 200, Markham, Ontario L3R 0G7, Canada.

[2]     All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion and the Bid Procedures, as appropriate.

Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David L. Buchbinder, Esquire); and (h) once it is formed, counsel to the Committee (collectively, the "Bidding Notice Parties"), not later than 4:00 p.m. (Eastern Time) on ____, 2010 (the "Bid Deadline") and shall comply with the requirements set forth in the Bidding Procedures for making such bid.

If a Qualified Bid other than the Purchaser's Bid is timely received, the Auction will be held on ____, 2010 at 10:00 a.m (Eastern Time). If however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Purchaser will be deemed the Successful Bidder and the Asset Purchase Agreement will be the Successful Bid.

If you seek to object to the sale of the Acquired Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order. Such Objections must be filed with the Bankruptcy Court for the District of Delaware and served on the Bidding Notice Parties no later than 4:00 p.m. (Eastern Time) on ____, 2010. If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection.

Dated:  Wilmington, Delaware
        [_____], 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Joseph M. Barry (No. 4221)
Kenneth J. Enos (No. 4544)
Ryan M. Bartley (No. 4985)
Andrew L. Magaziner (No. 5426)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:    (302)571-5039
Facsimile:    (302) 571-1253

*Proposed Counsel to the Debtors and
Debtors-in-possession*

YCST01:9726428.8

069219.1001

## EXHIBIT D TO BIDDING PROCEDURES ORDER

Assumption and Assignment Notice

| In re: | Chapter 11 |
| --- | --- |
| TRADE SECRET, INC., *et al.*,[1] | Case No. 10-_____ (__) |
| Debtors. | (Jointly Administered) |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH PROPOSED SALE OF DEBTORS' ASSETS**

      **PLEASE TAKE NOTICE** that on July 6, 2010, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the Debtors' Motion for an Order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I)(A) Approving Procedures in connection with Sale of Debtors' Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving Form and Manner of Notice Thereof; and (F) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Pursuant to Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief [Docket No. _____] (the "Bid Procedures Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

      At a hearing held before the Bankruptcy Court on ____, 2010, the Bankruptcy Court entered an Order approving the Bid Procedures Motion [Docket No. _____] (the "Bidding Procedures Order"). Any party in interest wishing to receive a complete set of the Asset Purchase Agreement, the Bid Procedures Motion and the Bidding Procedures Order may do so free of charge upon request of Debtors' counsel, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Andrew L. Magaziner., Esquire). Pursuant to the Bidding Procedures Order, on ____, 2010 at __:__ _.m (Eastern Time), the Bankruptcy Court will hold a hearing (the "Sale Hearing") to consider the Sale.

      Pursuant to the Bid Procedures Motion, the Debtors are seeking to assume and assign to the Purchaser or the Successful Bidder certain of their unexpired leases, license agreements and executory contracts (collectively, the "Assumed Contracts") free and clear of all liens, claims, encumbrances and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code (the "Cure Costs"). The Assumed Contracts that the Debtors may do, but are not required, seek to assume and assign and the corresponding Cure Costs are listed on the attached Exhibit A (the "Cure Schedule"). Receipt of this notice and inclusion on the Cure Schedule does not obligate the Debtor or any potential purchaser to assume and assign an Assumed Contract.

      Pursuant to the Bidding Procedures Order, any objection (a "Cure Objection") to the assumption and assignment by the Debtors of the Assumed Contracts and the corresponding Cure Costs must be (a) in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801 on or

---

[1]     The Debtors in these cases, along with the last four (4) digits of their federal tax identification numbers (if applicable) are: Premier Salons Beauty Inc. (EIN XX-XXX9717); Trade Secret, Inc. (EIN XX-XXX1292); Premier Salons Trade Secret Inc. (EIN XX-XXX9005); BeautyFirst, Inc. (EIN XX-XXX1954); Trade Secret Beauty Stores Inc. (EIN XX-XXX9804); Trade Secret Exclusive Stores Inc. (EIN XX-XXX9902); Trade Secret Luxury Stores Inc. (EIN XX-XXX9865); PureBeauty, Inc. (EIN XX-XXX4358). The address for each Debtor is 3762 14th Avenue, # 200, Markham, Ontario L3R 0G7, Canada.

[2]     All capitalized terms not herein defined shall have the same meaning ascribed to them as in the Bid Procedures Motion and the Bid Procedures, as appropriate.

before 4:00 p.m. (Eastern Time) on ____, 2010 (the "Cure Objection Deadline") and (d) served so as to be received no later than 4:00 p.m. (Eastern Time) on the same day upon: (i) the Debtors, 3762 14th Avenue # 200, Markham, Ontario L3R 0G7, Canada (Attn: Brian G. Luborsky); (ii) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899 (Attn: Joseph M. Barry, Esquire and Kenneth J. Enos, Esquire); (iii) financial advisors to the Debtors, Stoney Bridge Partners, Inc., 45 St. Clair Avenue West, Suite 1202, Toronto, ON M4V 1K9 Canada (Attn: Robert von der Porten and James Cook) and SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428 (Attn: J. Scott Victor);(iv) counsel to the Purchaser, Ravich Meyer Kirkman McGrath Nauman & Tansey, 4545 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402 (Attn: Michael L. Meyer (v) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David L. Buchbinder, Esquire); and (vi) once it is formed, counsel to the Committee; provided, however, that in the event the Auction results in a Successful Bidder other than the Purchaser, the Debtors shall file a notice identifying such Successful Bidder, and serve such notice upon each party identified in the Cure Schedule, and the deadline for objecting to the assignment of the Assumed Contracts to such Successful Bidder on the basis of adequate assurance of future performance will be the commencement of the Sale Hearing. Any such objection shall set forth a specific default in any Assumed Contract and claim a specific monetary amount that differs from the Cure Cost, if any, specified by the Debtors in the Cure Schedule.

Unless the non-Debtor party to an Assumed Contract timely files and serves a Cure Objection by the Cure Objection Deadline (or in the event that the Purchaser is not the Successful Bidder, at or prior to the Sale Hearing), such non-Debtor party to the Assumed Contract shall be: (a) forever barred from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder will be entitled to rely solely upon the Cure Cost set forth in the Cure Schedule; (b) deemed to have consented to the Debtors' assumption and assignment of such Assumed Contract; and (c) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder (i) that any additional amounts are due or other defaults exist, (ii) that additional conditions to assumption and assignment must be satisfied by the Debtors or the Successful Bidder or (iii) that there is any objection or defense with respect to the assumption and assignment of such Assumed Contract.

The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before the Bankruptcy Court or on the Bankruptcy Court's calendar on the date scheduled for said hearing.

Dated:  Wilmington, Delaware         YOUNG CONAWAY STARGATT & TAYLOR, LLP
       [_____], 2010

James L. Patton, Jr. (No. 2202)
Joseph M. Barry (No. 4221)
Kenneth J. Enos (No. 4544)
Ryan M. Bartley (No. 4985)
Andrew L. Magaziner (No. 5426)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:    (302)571-5039
Facsimile:    (302) 571-1253

*Proposed Counsel to the Debtors and*
*Debtors-in-possession*

2

# **EXHIBIT A**

Cure Schedule